

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| A. STEPHAN BOTES, | :: | CIVIL ACTION NO. |
| BOP Reg. # 56403-019, | :: | 1:08-CV-02854-CAM |
| Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| BRIAN STEEL, | :: | FEDERAL DIVERSITY ACTION |
| Defendant. | :: | 28 U.S.C. § 1332 |

## ORDER AND OPINION

Plaintiff A. Stephan Botes and Defendant Brian Steel have filed cross motions for summary judgment in this federal diversity action. Now before the Court are Steel's motion for summary judgment [35], with supporting brief [35-2] and affidavits [35-5, 35-7, 40-2, 40-3], and motion to supplement same [40]; Botes's response [46], with supporting affidavits [47-49] and motion to supplement same [58]; Steel's reply [56]; Botes's sur-response [66]; Botes's motion for summary judgment [50], with supporting affidavit [53]; Steel's response [59]; and Botes's reply [65].[1] For the reasons set forth below, the Court **GRANTS** Steel's motion for summary judgment [35] and **DISMISSES** this action.

---

[1] Also before the Court are Botes's motions for directions to the Clerk of Court [60], for an extension of time [61], and for leave to file excess pages [64], and Steel's motion for leave to file a supplemental brief [67].

Botes is serving a 97-month term of imprisonment for embezzling federal funds and wire fraud. United States v. Botes, No. 1:04-CR-568-3-CC (N.D. Ga. 2006) ("Botes I"), aff'd, 290 F. App'x 316 (11th Cir. 2008), cert. denied, 130 S. Ct. 55 (2009). Botes sues Steel, one of his defense attorneys in Botes I, "for breach of contract, statutory violations and constitutional tort." (Compl. [1] at 1.) Botes seeks return of "the $100,000 Steel was paid" to represent him and compensation for his alleged "stress, anxiety, pain and suffering" resulting from Steel's actions as his defense counsel. (Id. at 17-23.)

## I. Summary Judgment Standard

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187

(11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the non-movant then must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). See

3

AO 72A
(Rev.8/82)

also Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*") (emphasis added). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

## II. Discussion

### A.  Facts

Unless otherwise indicated, the following facts are undisputed or are set forth in the light most favorable to Botes. Botes was arrested in the Northern District of Georgia on November 5, 2004, hired Howard Weintraub to represent him, and was indicted on November 10. In August 2005, Botes contacted Steel about becoming lead counsel for his upcoming trial (although Steel asserts that Botes first contacted him in December 2005). The Zurich American Insurance Company agreed to pay Steel's legal fees under a Directors and Officers insurance policy covering Botes. On January 10, 2006, Steel entered an appearance as Weintraub's co-counsel. On April 11, Weintraub's unopposed motion to withdraw was granted. On April 20, at Steel's suggestion, Daniel Griffin entered an appearance as Steel's co-counsel.

AO 72A
(Rev.8/82)

Botes's jury trial, with the Hon. Clarence Cooper presiding, began on May 1, 2006, and Steel learned the next day that the lead prosecutor, Russell G. Vineyard, had been chosen to fill a vacancy as Magistrate Judge for this Court. Steel moved for a mistrial based on a potential conflict of interest. Judge Cooper denied the motion after holding a conference in chambers from which Botes, but not Steel, was excluded. Botes alleges that Steel concealed the conference and its proceedings from him, although Steel denies this allegation. On May 24, 2006, the jury convicted Botes on (1) one count of conspiracy to defraud the State of Georgia and embezzle federal funds, (2) eleven counts of theft from programs receiving federal funds, and (3) three counts of wire fraud. The jury acquitted Botes on six counts of wire fraud, twenty-six counts of money laundering, and one count of structuring financial transactions. On September 13, 2006, Botes received a combined sentence of 97 months' imprisonment. See Botes I, Docs. 76, 247, 286. On September 22, Botes filed a notice of appeal; on September 28, Lynn G. Fant entered an appearance as Botes's counsel of record for his appeal; on October 9, Steel and Griffin moved to withdraw as counsel for Botes; and on October 27, Judge Cooper granted that unopposed motion. See id., Docs. 294, 297, 299, 309.

AO 72A
(Rev.8/82)

## B. Parties' Arguments[2]

### 1. Steel's Arguments in Support of Summary Judgment

At the outset, Steel notes that "[a]lthough the causes of action in the complaint are mostly generalized and not well-defined, there are attempts at claims for legal malpractice, civil rights violations and emotional distress. Botes' disclosures also list several general civil claims like breach of contract." (Memo. Law Supp. Def.'s Mot. Summ. J. ("Def.'s Br.") [35-2] at 1.) Steel discusses Botes's claims under the rubric of legal malpractice, a civil rights violation, infliction of emotional distress, and general civil claims. (Id. at 11, 19, 21, 24.)

Steel argues that Botes's legal malpractice claims fail because they are not supported by expert legal testimony and because "virtually all of the issues raised by Botes about Steel's work on the case involve trial tactics where lawyers have broad discretion to decide which evidence to introduce, which witnesses to call, and other tactical decisions of how to conduct a trial," that is, the claims are barred by the doctrine of judgmental immunity, which protects attorneys in legal malpractice suits. (Id. at 12-16.) Steel next argues that Botes's suggestion is baseless that he engaged in

---

[2] Because Steel is entitled to summary judgment, the Court does not discuss the parties' arguments regarding Botes's motion for summary judgment, which, for obvious reasons, fails.

6

a conspiracy, in violation of 42 U.S.C. § 1985 and 28 U.S.C. § 1343, to exclude Botes from the conference held in Judge Cooper's chambers to discuss Magistrate Judge-elect Vineyard's status. (Def.'s Br. at 19-21.) Steel argues further that even if he had committed legal malpractice, "there is no evidence to support a claim that [he did so] intentionally to cause [Botes] emotional suffering," negating any claim that he *intentionally* inflicted the emotional distress Botes alleges he has suffered. (Id. at 22 *et seq.*) Finally, Steel argues that Botes's remaining civil claims, for breach of contract, breach of fiduciary duty, and the like, are in reality legal malpractice claims arising from Steel's representation of Botes at his criminal trial, which claims fail for the same reason as Botes's other legal malpractice claims. (Id. at 25.)

2. **Botes's Response**

Botes responds that this case is indeed "a breach of contract suit." (Pl.'s Opp'n Def.'s Br. ("Pl.'s Opp'n") [46] at 12.) Botes lists thirty-one genuine issues of material fact precluding summary judgment, which can be grouped as follows: (1) the timing and circumstances under which Steel joined Botes's defense team (issues 1-3); (2) Steel's failure to help modify Botes's pretrial release conditions (issue 4); (3) Steel's failure to invoke Botes's right to a speedy trial (issues 5-8); (4) Steel's conflict of interest and inability to advocate aggressively on Botes's behalf against

Magistrate Judge-elect Vineyard, who remained as the lead prosecutor in Botes's case, and Steel's failure to demand that Botes be present at the in-chambers conference regarding Vineyard's status (issues 9-12); (5) Steel's refusal to communicate with Botes during the trial (issue 13); (6) Steel's failure to present an alibi defense to the jury (issue 14); (7) Steel's failure to present exculpatory evidence concerning the Paradigm Pioneers contract (issues 15-16); (8) Steel's failure to challenge the government's failure to produce "missing 301 and 302 notes" prepared by Federal Bureau of Investigation agents during their interviews of government witnesses, and Steel's failure to challenge the inadmissible testimony of one of the agents (issues 17-20); (9) Steel's failure to object to the prosecutor's contact with Botes and his co-defendant (issue 21); (10) Steel's failure to object to the prosecutor's closing argument (issue 22); (11) Steel's failure "to supervise Griffin's sub-standard performance" (issue 23); (12) Steel's wrongful disclosure to Judge Cooper of Botes's criminal past in South Africa (issue 24); (13) Steel's impeaching a witness who had exculpated Botes (issue 25); (14) Steel's failure to present to the jury the truth about "all the money stolen from Botes' company" (issues 26-28); (15) Steel's failure to object to his co-defendant's counsel's "false antagonistic statements" (issue 29); (16) Steel's failure to present exculpatory evidence regarding the formation of the

8

limited liability companies that were used to launder the money allegedly stolen from the State of Georgia (issue 30); and (17) Steel's failure to challenge the loss level used at Botes's sentencing to increase his base offense level (issue 31). (Id. at 6-11.)

Botes argues that the issues in "this breach of contract and tort claim" are, "quite simply, did Steel's performance fall below an acceptable standard of care, did he act dishonestly towards Botes, did he violate[] the covenant of good faith and fair dealing[], and as Botes' agent, did he maintain his duty of specialized skill, loyalty and honesty, and did he act at all times in the best interests of Botes, and if he [did] not, were the damages Botes suffered a reasonably foreseeable consequence of his actions or inactions." (Id. at 16.) Botes notes the "scripts" and other defense documents he prepared "for Steel to review so he would learn all the intricacies in the case," which Steel "evidently failed to look at," causing him to "neglect[ the] over 100 trial issues they contained, that were important to Botes' defense." (Id. at 12-13, 16.)

As noted above, Botes alleges that Steel suffered from a "conflict of interest, having to choose between zealous advocacy of Botes' cause and risking the ire of magistrate-elect Vineyard, or tone down his vigor in consideration of his future clients and appearances before Vineyard." (Id. at 17.) Botes asserts his "causes of action to include breach of contract, personal injury, civil rights violations, tort, breach of

9

fiduciary duty, breach of legal duty, negligence and violations of [his] constitutional and statutory rights." (Id. at 18.) Botes claims he has shown violations of his rights to a speedy, public trial and to counsel unburdened by a conflict of interest. (Id. at 19.)

Botes alleges that, in refusing "to review and investigate all of the exculpatory evidence Botes had given him[,] . . . misrepresent[ing] Botes' legal position on theories of defense," and committing other serious trial errors and failures, including refusing to communicate with Botes, "Steel's conduct was reckless, extreme, and outrageous, . . . caus[ing] Botes not being able to testify in his own defense" and resulting in "severe emotional harm" to Botes – "being convicted and serving a sentence." (Id. at 19.) Botes denies, however, that he has brought a claim of intentional infliction of emotional distress, explaining that his "is a breach of contract and tort claim where emotional distress is just one of the natural and reasonably foreseeable consequences of Steel's tortious actions." (Id. at 20.) Botes argues that Steel's "breach is as much a breach as a plumber under contract doing a lousy job." (Id.)

### 3. Steel's Reply and Botes's Sur-Response

Steel replies by noting that Botes's recitation of the issues in his "breach of contract" and "tort" claims, set forth above (see Pl.'s Opp'n at 16), "is a text book

definition of the professional duties of a lawyer to his client." (Def.'s Reply Pl.'s Opp'n (" Def.'s Reply") [56] at 4-5.) Steel argues, accordingly, that "[t]hese claims cannot possibly go forward to a jury under Georgia law without some competent expert testimony to support the claims." (Id. at 5.) Steel notes that in Botes's Attachments [46-3] to his response to Steel's summary judgment motion, Botes lists numerous assertions allegedly supporting his claims against Steel, "each and every one of [which] is an attack on [Steel's] professional skill . . . and questions his legal judgment as an attorney." (Def.'s Reply at 5-6.) Steel argues that "[a]s a practical matter no jury could possibly be asked to decide whether filing or not filing a speedy trial motion on the particular facts of Botes' criminal case was a breach of professional duty. These are clearly issues that require expert testimony." (Id. at 6.) Steel notes that, in contrast to his own presentation of affidavits from three legal experts – himself; Daniel Griffin, his co-counsel at Botes's trial; and Bruce Morris – Botes "has produced no competent expert testimony at all." (Id. at 8.) Steel acknowledges "alleged disputes about some facts," such as when Botes first contacted Steel to retain him as counsel (i.e., whether it was in August or December 2005), but no "dispute of *material* fact." Accordingly, he argues, he is entitled to summary judgment. (Id. at 15.)

11

In sur-response, Botes for the most part covers the same ground he has covered before, and argues that summary judgment is improper here because he "may be able to establish [the] requisite elements of his cause for action by examination of [Steel's] expert witness," and because a "lay person is competent to determine whether an attorney was negligent in fail[ing] to obtain information before trial." (Pl.'s Resp. Def.'s Reply [66] at 11.)

## C. Analysis

### 1. The Elements of a Legal Malpractice Claim Under Georgia Law

In a federal diversity action based on 28 U.S.C. § 1332 jurisdiction, as here, "state law governs substantive issues, while federal law governs pleading requirements." Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993) (citation omitted). Georgia substantive law provides that "[i]n order to state a claim for legal malpractice, a plaintiff must establish three elements: '(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff.'" Brown v. Lewis, No. 4:08-CV-150, 2009 U.S. Dist. LEXIS 43776, at *33-34 (M.D. Ga. May 22, 2009) (quoting Duke Galish, L.L.C. v. Arnall Golden Gregory, L.L.P., 653 S.E.2d 791, 793 n.3 (Ga. Ct. App. 2007)). "[I]n a legal malpractice case, the presumption is that the

12

legal services were performed in an ordinarily skillful manner[, and it] remains with the attorney until . . . rebutted by expert legal testimony; otherwise, the grant of summary judgment in favor of the attorney is proper." Johnson v. Butcher, 301 S.E.2d 665, 666-67 (Ga. Ct. App. 1983). Nevertheless, the Georgia Court of Appeals has noted an exception to the expert testimony requirement "in clear and palpable cases (such as the expiration of a statute of limitation)." Hughes v. Malone, 247 S.E.2d 107, 111 (Ga. Ct. App. 1978).

Georgia law requires that "[i]n any action for damages alleging professional malpractice" against, among others, "[a]ttorneys at law," the plaintiff shall "file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." O.C.G.A. § 9-11-9.1(a)(3), (g)(2). See Hopkinson v. Labovitz, 499 S.E.2d 338, 339 (Ga. Ct. App. 1998) (affirming dismissal of malpractice claims against defendant attorney because "plaintiff never filed the affidavit required pursuant to O.C.G.A. § 9-11-9.1," and noting "that to whatever extent plaintiff may seek to avoid the affidavit requirement on the basis that the alleged professional negligence is so 'clear and palpable' that it may be understood by a jury without expert evidence, this contention must yield to the mandatory direction contained in

13

O.C.G.A. § 9-11-9.1"). "However, courts within this district have previously held that Georgia's expert affidavit requirement contained in O.C.G.A. § 9-11-9.1" is a state procedural requirement that "does not apply in diversity actions filed in federal district courts," where only state substantive law controls. Denton v. United States, No. 1:04-CV-3285, 2006 U.S. Dist. LEXIS 9770, at *8 & n.4 (N.D. Ga. Feb. 15, 2006) (Vining, J.) (citing Baird v. Celis, 41 F. Supp. 2d 1358, 1360 (N.D. Ga. 1999) (Camp, J.)). It appears that the Eleventh Circuit has yet to reach "the question of whether § 9-11-9.1 actually applies in federal court." Id. at *8 n. 4 (citing Nichols, 8 F.3d at 774).

Nevertheless, although a plaintiff alleging legal malpractice in a federal diversity action governed by Georgia law need not attach an expert affidavit to his complaint, he must present "the testimony of an expert witness" to "create an issue of fact" for trial "concerning alleged legal malpractice." Helmich v. Kennedy, 796 F.2d 1441, 1442 (11th Cir. 1986). In Helmich, the Eleventh Circuit affirmed the grant of summary judgment, by a district court sitting in diversity, to the defendant attorneys on the plaintiff's legal malpractice claim because plaintiff "had not provided any expert testimony to support his allegations of malpractice and had failed to rebut the presumption the defendants performed their legal services in an ordinarily skillful

14

manner." Id. The court rejected plaintiff's attempt to rely on statements of fact in his counseled 28 U.S.C. § 2255 brief – alleging that the malpractice defendants had provided him ineffective assistance during his criminal trial – because those statements were "not in proper affidavit form," and, therefore, could not "be considered in determining if a genuine issue of material fact exist[ed]." Id. at 1443.

Moreover, "Georgia has adopted the doctrine of judgmental immunity, holding [that] the tactical decisions made during the course of litigation require, by their nature, that the attorney be given a great deal of discretion." Hudson v. Windholz, 416 S.E.2d 120, 124 (Ga. Ct. App. 1992) (internal quotations omitted).

> [T]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight. If this were permitted, . . . the original trial would become a "play within a play" at the malpractice trial.

Id. (quoting Woodruff v. Tomlin, 616 F2d 924, 930 (6th Cir. 1980), "one of the seminal cases on judgmental immunity").

### 2. Disposition

As noted above, in a federal diversity action governed by the substantive law of Georgia, a defendant attorney is entitled to summary judgment on a legal

15

malpractice claim if the plaintiff has not supported the claim with an affidavit or other sworn testimony from a legal expert. See OFS Fitel, LLC v. Epstein, 549 F.3d 1344, 1357 & n.8 (11th Cir. 2008) (concluding that order "excluding plaintiff's legal expert was case-dispositive [under Georgia law in federal diversity action] because it foreclosed [plaintiff] from presenting the expert testimony required to prove professional negligence, which was a core element in all of its claims," including its "breach of fiduciary duty claims," which "incorporate[d] the allegations of legal malpractice without adding any independent factual allegations"). The Court finds that Botes's "breach of contract" and "tort" claims are, in fact, legal malpractice claims, in support of which it is undisputed that Botes has offered no expert legal testimony regarding the standard of "ordinary care, skill and diligence" that Steel allegedly violated. See Lewis, 2009 U.S. Dist. LEXIS 43776, at *33-34.

The Court also finds that none of Botes's legal malpractice claims are so "clear and palpable" as to constitute an exception under Georgia law to the expert testimony requirement. See Malone, 247 S.E.2d at 111. Finally, the Court finds that each of Steel's allegedly ill-advised decisions made during the course of representing Botes is protected by the doctrine of judgmental immunity. See Windholz, 416 S.E.2d at 124. Accordingly, Steel is entitled to summary judgment on Botes's breach of contract

and tort claims, alleging that Steel's representation of him at trial was inadequate, which claims are, in reality, legal malpractice claims. See Epstein, 549 F.3d at 1357 & n.8.

The Court finds it unnecessary to address in detail Botes's remaining claims, which, in any case, Botes has hardly done more than list in summary fashion, without support sufficient to create a genuine issue of material fact for trial. To the extent that Botes's claims of "breach of contract, personal injury, civil rights violations, tort, breach of fiduciary duty, breach of legal duty, [and] negligence" (Pl.'s Opp'n at 18) implicate the quality and skill of the legal representation Steel provided him, these claims fail for the same reason that Botes's legal malpractice claims fail – because Botes has not supported them with expert legal testimony. See Epstein, 549 F.3d at 1357 & n.8 (noting that lack of expert legal testimony was case-dispositive of plaintiff's claims, however styled, because "professional negligence . . . was a core element in all of" those claims, including "breach of fiduciary duty"). Accordingly, Steel is entitled to summary judgment on Botes's remaining civil claims as well.

AO 72A
(Rev.8/82)

### III. Conclusion

For the foregoing reasons, Steel's motion for summary judgment [35] is **GRANTED**; Steel's motions to supplement [40, 67] and Botes's motions to supplement [58], for extension of time [61], and for leave to file excess pages [64] are **GRANTED** *nunc pro tunc*; Botes's motion for summary judgment [50] is **DENIED**; and Botes's motion for directions to the Clerk of Court [60] is **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 17th day of March, 2010.

CHARLES A. MOYE, JR.
UNITED STATES DISTRICT JUDGE